# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELM RIDGE EXPLORATION COMPANY, LLC

    Plaintiff/Counterclaim Defendant,

vs.                                                                      Civ. No. 10-00328 MCA/LFG

FRED ENGLE,

    Defendant/Counterclaimant,

and

FRED ENGLE,

    Third-party Plaintiff,

vs.

GIANT EXPLORATION and PRODUCTION
COMPANY  and
CENTRAL RESOURCES, INC.,

    Third-party Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court upon Plaintiff/Counterclaim Defendant Elm Ridge Exploration Company, LLC's ("Elm Ridge's") *Motion for Partial Summary Judgment* [Doc. 72]. The Court has considered the *Motion*, Defendant/Counterclaimant Fred Engle's ("Engle's") *Response* [Doc. 81], Elm Ridge's *Reply* [86], and is otherwise fully advised in the premises.

**BACKGROUND**

This case was filed in state court by Elm Ridge and removed to this Court by Engle on the basis of diversity of citizenship. The case arises out of an oil and gas Operating Agreement covering certain oil and gas interests in San Juan County, New Mexico.  Elm Ridge, alleging that it is successor-in-interest to the original operator, seeks to foreclose on certain oil and gas interests owned by Engle, an original party to the Operating Agreement and the non-operator. Elm Ridge alleges that Engle has breached the Operating Agreement by failing to pay his share of expenses incurred by Elm Ridge in 2008 in drilling a well on the properties that are the subject of the Operating Agreement.  Engle denies that Elm Ridge is the successor-in-interest to the original operator, that he has breached the Operating Agreement, or that he is liable for the share of expenses claimed by Elm Ridge.  Engle has counterclaimed against Elm Ridge and has also brought suit against Giant Exploration and Production Company ("Giant"), and Central Resources, Inc. ("Central"), the predecessor operators, as well as Giant Industries, Inc., Giant's parent corporation, asserting that these parties conspired with Elm Ridge to deprive Engle of certain rights under the Operating Agreement. By a stipulation of dismissal, Engle has dismissed Giant Industries.

**UNDISPUTED FACTS**

The following facts are undisputed.

Engle and Giant were parties to an "Operating Agreement" dated  November 2, 1992.[1] Giant was designated as the "Operator" and Engle was designated as a "Non-Operator."  The Operating Agreement provided that

---

[1] The parties employed a form agreement drafted by the American Association of Petroleum Landsmen.

> . . . Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. . . . A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.
>
> . . . Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest . . . .

The "Contract Area" consisted of certain tracts of land San Juan County, New Mexico, including the Eastern half of Section 22, T25N-R13W. The lands comprising the Contract Area were subject to four Federal Oil and Gas leases, two of which were separately owned by Giant and two by Engle. Pursuant to the Operating Agreement, Giant drilled and completed a well known as West Bisti 22 Com No. 1 within the Contract Area.

Giant sent a letter dated August 30, 1996 to Engle. Engle or someone acting on his behalf received the letter on September 11, 1992. The letter stated as follows:

> Re: Notice of Contract Operating Agreement
>
> Ladies and Gentlemen:
>
> Giant Exploration & Production Company ("Giant") is the operator for the properties described in Exhibit A (the "Properties"). Giant has entered into a contract operating agreement (the "Contract Operating Agreement") with Central Resources, Inc. ("Central") in connection with the Properties. In accordance with the Contract Operating Agreement, Central will perform (on behalf of Giant) Giant's obligations as operator, including the processing of invoices and the issuance of Joint Interest Billings. Accordingly, Giant hereby requests and authorizes you to submit all correspondence, payments and other information to Central that you are presently submitting to Giant pursuant to the governing operating agreement.

Attached to the letter as "Exhibit A" was a document describing the subject property as the well identified as Bisti Coal 22 #1.

Central sent a letter to Engle dated September 30, 1996. Engle received the letter in October 1996. The letter stated as follows:

> Dear Working Interest Royalty Owner:
>
> Effective April 1, 1996, Central Resources, Inc. ("Central") purchased certain oil and gas properties in Colorado, Kansas, New Mexico, Oklahoma and Utah owned by Giant Exploration and Production and assumed operatorship of those properties on September 1, 1996. . . .

Central sent a second letter to Engle dated September 29, 2000. That letter stated as follows:

> TO:  JOINT WORKING INTEREST OWNERS
>
> NOTICE OF CHANGE OF OPERATORSHIP/OWNERSHIP
>
> Ladies and Gentlemen:
>
> Our records indicate that you currently own a working interest in each of the properties described on the attached Exhibit (the "Properties"), which Properties were operated by Central Resources, Inc. Effective June 1, 2000 (with Closing today), Central transferred its interest in the Properties to Elm Ridge Exploration Company (Elm Ridge). Effective October 1, 2000 at 7:00 AM Local Time, Central resigns as Operator and Elm Ridge assumes operatorship of the Properties.

**SUMMARY JUDGMENT STANDARD**

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim . . . on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law. " As our Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)."The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**DISCUSSION**

**Count I**

Elm Ridge has moved for partial summary judgment as to Count I of Engle's Counterclaim, asserting that to the extent that Count I asserts that Elm Ridge is not the authorized Operator under the Operating Agreement Engle's claim is time-barred under the applicable statute of limitations. [Doc. 72 at 2] A federal court excising diversity jurisdiction must apply the law of the forum state for statute of limitations purposes. *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228 (2008). State law in this context includes state tolling rules. *Id.* Elm Ridge asserts that Count I is governed by the six-year statute of limitations for actions on written contracts, NMSA 1978, § 37-1-3. [Doc. 72 at 12] Engle agrees with Elm Ridge that § 37-1-3 is the governing statute of limitations, but argues that by application of the "discovery rule," *Wilde v. Westland Dev. Co., Inc.*, 148 N.M. 627, 634 (Ct. App. 2010), the statute of

limitations did not begin to run until 2008, when Engle claims to have first discovered that representations in Giant's August 30, 1996 letter were false.[Doc. 81 at 8]

Engle seriously misunderstands the operation of New Mexico's discovery rule.  As *Wilde* makes clear, subjective awareness that one's legal rights have been invaded is not necessary to trigger the running of a statute of limitations under New Mexico's discovery rule;  rather, New Mexico law merely requires that the affected party discover "such facts as would, on reasonable diligent investigation, lead to knowledge of the [fraud] or other injury."  *Wilde*, 148 N.M. at 634 (quoting *Ambassador E. Apartments Investors v. Ambassador E. Invs.*, 106 N.M. 534, 536 (Ct. App. 1987)). Under New Mexico's discovery rule "[t]he key consideration . . . is the *factual, not the legal*, basis for the cause of action.  The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action."  *Delta Automatic Sys., Inc. v. Bingham*,  126 N.M. 717, 724 (Ct. App. 1998) (emphasis added).

The Court agrees with Engle that Giant's August 30, 1996 letter does not clearly express Giant's intention to resign as Operator:  the August 30, 1996 letter can reasonably be understood as referring to a subcontract between Giant and Central pursuant to which Giant merely had delegated its day-to-day  responsibilities as Operator to Central, while technically retaining its position as Operator.  However, Central's September 30, 1996 letter clearly states that Central has *purchased* from Giant certain oil and gas properties in New Mexico and has *assumed operatorship* of those properties.  As a party to the Operating Agreement, Engle is presumed to have been familiar with its terms.  *See Smith v. Price's Creameries*,  98 N.M. 541, 545 (1982) ("Generally, a party who executes and enters into a written contract with another is presumed to know the terms of the agreement. . . ."). Engle knew or should have known that the properties

owned by Giant included the two federal oil and gas leases that were identified in Exhibit A to the Operating Agreement and that provided the basis for Giant's participation in the Operating Agreement.  Since there is no suggestion the record that Giant and Engle were involved in other ventures, a reasonable person in Engle's shoes could only have understood the September 30, 1996 letter as referring to the properties listed in Exhibit A to the Operating Agreement. Thus, by September 30, 1996, Engle knew, or should have known in the exercise of reasonable diligence, that Central had purchased from Giant the two leases described in Exhibit A to the Operating Agreement and that Central had assumed Giant's position as Operator.  By operation of Article V.B.1. of the Operating Agreement, Giant resigned as Operator when it sold its interests to Central.  The Court concludes that on the undisputed facts a reasonable jury necessarily would find that by September 30, 1996, all the facts necessary for Engle to object to Central's assumption of the operatorship or to assert his right under the Operating Agreement to select a successor Operator were either known to Engle or discoverable through the exercise of reasonable diligence.  Accordingly, the statute of limitations applicable to any claims based upon Central's assumption of the role of Operator began to run on September 30, 1996, expiring six years later in 2002.

A similar analysis applies to contract claims based on Elm Ridge's subsequent assumption of the role of Operator.  Central's September 29, 2000 letter clearly informs the reader that Central had transferred its interest in the West Bisti Coal 22-1 B to Elm Ridge and that Elm Ridge would assume the role of Operator effective October 1, 2000. Thus, the Court concludes that on the undisputed material facts any reasonable jury necessarily would find that by September 29, 2000, Engle knew or should have known through the exercise of reasonable diligence that Central had sold its interests to Elm Ridge and that Elm Ridge was assuming the role of Operator

effective October 1, 2000. Accordingly, the statute of limitations applicable to contract claims based upon Elm Ridge's assumption of the role of Operator began to run on September 29, 2000, and expired in September 2006.

Engle argues that the Stock Purchase Agreement between Giant Industry, Inc. (Giant's parent corporation) and Central was not effective to transfer Giant's interests under the Operating Agreement to Central. [Doc. 81 at 14-15]  The Court need not reach the merits of this argument. The Court is persuaded that if Engle had timely objected to Central's assumption of the operatorship,  Engle, in the exercise of reasonable diligence, would learned of the role of the Stock Purchase Agreement between Giant Industries, Inc. and Central in Central's acquisition of Giant's interests.  Central's unilateral assumption of the role of Operator, as announced in the September 29, 1996 letter, was sufficient to trigger Engle's duty of  inquiry, *Butler v. Deustche Morgan Grenfell*, 140 N.M. 111, 120 (Ct. App. 2006) (observing that "the awareness of an injury creates a duty to inquire into its causes"), into why Central claimed the right to assume the role of Operator.  The argument that Giant did not properly assign its rights under the Operating Agreement to Central is merely an alternate rationale for claiming that Elm Ridge is not the lawful Operator under the Operating Agreement.  As such it is subsumed by Count I, and is time barred.

**Count II**

Elm Ridge asserts that Count II, Engle's conspiracy claim, is governed by a four-year statute of limitations,  NMSA 1978, § 37-1-4.  Engle alleges a conspiracy among Giant, Giant's parent corporation Giant Industries, Inc., and Central to deprive Engle of his right under the Operating Agreement to select a successor Operator.  Engle agrees with Elm Ridge that § 37-1-4 is the governing statute of limitations. Engle's arguments based on the discovery rule are no more

persuasive here than they were with respect to Count I.  By October 1, 2000, Engle knew that Giant claimed to have transferred its interests in the Contract Area to Central and that Central claimed to have transferred Giant's former interests to Elm Ridge.  Engle knew that Central had assumed operatorship in September 1996 and that Elm Ridge had assumed operatorship effective October 1, 2000.  This constituted  "sufficient information which would put a reasonable person on notice and a duty to timely initiate a claim." *Martinez v. Showa Denko, K.K.*, 125 N.M.615, 621 (Ct. App. 1998). The statute of limitations applicable to Count II expired in 2004, well before Engle filed his counterclaim.

**Count III**

Elm Ridge has moved for partial summary judgment on Count III. In Count III Engle claims that Elm Ridge committed a breach of fiduciary duty by failing to secure the permits and equipment required to drill an additional well under a June 2005 proposal.   Elm Ridge seeks summary judgment to the extent that Count III asserts a claim for breach of fiduciary duty.

Elm Ridge argues that two provisions in the Operating Agreement prevented a fiduciary relationship from arising.  Since the operative material facts for purposes of this motion consist of the terms of the Operating Agreement, Elm Ridge's motion for partial summary judgment presents a question of law–the legal effect of those terms.  *See Haberman v. The Hartford Ins. Group, Inc.*, 443 F.3d 1257, 1264 n.5  (10th Cir. 2006) (noting distinction between summary judgment motions raising the sufficiency of the evidence to create a genuine issue of fact and those raising a question of law).

First, Elm Ridge argues that a provision exculpating Elm Ridge for losses except those resulting from gross negligence or willful misconduct is inconsistent with a fiduciary relationship.  The Court is not persuaded by this argument.   By way of example, a principal-agent  relationship

is unquestionably fiduciary. *Hydro Resources Corp. v Gray*, 143 N.M. 142, 153 (2007) (citing Restatement (Second) of Agency § 1 at 7 (1958)). Yet, it is well established that the parties to a principal-agent relationship may agree that the agent is not liable to the principal "for negligence not of a gross character." 2 Restatement (Second) Agency § 379, cmt. a. (1958). Similarly, a trustee has a fiduciary relationship to the beneficiary. Restatement (Second) Trusts § 2, cmt. b; § 170, cmt. a (1959). Nonetheless, a trust agreement may relieve a trustee from liability for breaches of trusts other than breaches of trust amounting to bad faith or reckless indifference. *See* NMSA 1978, § 46A-10-1008 (2003). It is quite clear, therefore, that an agreement establishing a fiduciary relationship may include a provision limiting the liability of an agent or other fiduciary such as that found in the Operating Agreement, without affecting the overall fiduciary nature of the relationship. There is no inconsistency between the inclusion of such a provision and the existence of a fiduciary relationship.

Second, Elm Ridge argues that language in the Operating Agreement stating that the Operating Agreement does not create a partnership "established that the parties did not intend to form a joint venture that would include the imposition of a fiduciary duty on the Operator." [Doc. 72 at 22] The New Mexico Supreme Court has characterized the relationship between the parties to an operating agreement as "fiducial." *Jack v. Hunt*, 75 N.M. 686, 698 (1966). Therefore, even if, as Elm Ridge argues, the Operating Agreement by its terms does not create a

partnership or joint venture,[2] it nevertheless establishes a relationship that the New Mexico Supreme Court has characterized as "fiducial."

Elm Ridge's motion for partial summary judgment as to Count III will be denied.

**Third-party Complaint**

Elm Ridge, asserting that it is successor-in-interest to Giant, seeks dismissal of the third-party complaint against Giant.[3]

The Court agrees with Elm Ridge that Engle's third-party complaint against Giant is time-barred for precisely the same reasons that the Court has found that Count II of Engle's counterclaim against Elm Ridge is time-barred.

---

[2]It is not clear that a provision disclaiming an intention to form a partnership would be effective to prevent a partnership from arising by operation of law, if the business relationship created by the Operating Agreement otherwise would constitute a partnership or joint venture. *See* Thomas P. Schoedter and Lewis G. Masburg, Jr., *An Introduction to the AAPL Model Form Operating Agreement*, Rocky Mt. Min. Law Special Inst. n.15 (1990 May) (observing that "in many states, the model form may create a "mining partnership' by operation of law, despite these provisions"). Under New Mexico law, "[i]t is immaterial that the parties do not designate the relationship as a partnership, or realize that they are partners. . . ." *Anderson Hay and Grain Co. v. Dunn*, 81 N.M. 339, 341 (1970). Under California case law, to which the *Anderson Hay* Court cited, "[a]n express stipulation under written articles of agreement to the effect that the relationship is not one of partnership is of no value, if such is the actual nature of the business." *Singleton v. Fuller*, 259 P.2d 687, 691 (Cal. Ct. App. 1953).

[3]Giant was not properly joined as a third-party defendant: "The liability of the third-party defendant to the party that impleaded it must be for losses sustained by the party as a *result of plaintiff's claim*[.]" 3 *Moore's Federal Practice* § 14.04[2] (2011);*Ocasek v. Hegglund*, 673 F. Supp. 1084, 1088 (D. Wyo. 1987). It appears, however, that Giant could have been joined as an additional counterclaim defendant to Count II pursuant to Fed. Civ. P. Rule 20. 4 *Moore's Federal Practice* § 20.02[2][b][ii].

11

**CONCLUSION**

Elm Ridge's motion for summary judgment will be granted as to Counts 1 and 2 of Engle's counterclaim and as to Engle's third-party complaint against Giant.  Elm Ridge's motion for partial summary judgment will be denied as to Count 3 of Engle's counterclaim.

**IT IS THEREFORE HEREBY ORDERED** that Plaintiff/Counterclaim Defendant Elm Ridge Exploration Company, LLC's *Motion for Partial Summary Judgment* [Doc. 72] **is granted in part and denied in part**;

**IT IS FURTHER ORDERED** that Counts 1 and 2 of Defendant/Counterclaimant Fred Engle's counterclaim are **dismissed with prejudice**;

**IT IS FURTHER ORDERED** that Defendant/Third-party Plaintiff Fred Engle's third-party complaint is **dismissed with prejudice** as to Third-party Defendant Giant Exploration and Production Co.

**So ordered this 29th day of August, 2011.**

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE