IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ELM RIDGE EXPLORATION COMPANY, LLC

        Plaintiff/Counterclaim Defendant,

vs.　　　　　　　　　　　　　　　　　　　　　　　　Civ. No. 10-00328 MCA/LFG

FRED ENGLE,

        Defendant/Counterclaimant,

and

FRED ENGLE,

        Third-party Plaintiff,

vs.

GIANT EXPLORATION and PRODUCTION
COMPANY  and
CENTRAL RESOURCES, INC.,

        Third-party Defendants.


**MEMORANDUM OPINION AND ORDER**

        This case is before the Court upon Defendant/Counterclaimant Fred Engle's *Motion for Summary Judgment* [Doc. 68]. The Court has considered the *Motion*, Plaintiff/Counterclaim-Defendant Elm Ridge Exploration Company, LLC's *Response* [Doc. 76], and is otherwise fully advised in the premises.

**BACKGROUND**

Fred Engle and Giant Exploration & Production Co. were parties to an "Operating Agreement" dated November 2, 1992. Giant was designated as the "Operator" and Engle was designated as a "Non-Operator." In June 2005, Elm Ridge, claiming to act as successor Operator notified Engle of a proposal to drill an additional well within the Contract Area. Engle agreed to participate.

Elm Ridge's obligations as Operator with respect to the second well are set out in Article VI.B.1

> If all parties elect to participate in such a proposed operation, Operator shall, within ninety(90) days after expiration of the notice period of thirty (30) days . . . actually commence the proposed operation and complete it with due diligence at the risk and expense of all parties hereto; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter for title approval or acceptance. Notwithstanding the force majeure provisions of Article XI, if the actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted herein) and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance with the provisions hereof as if no prior proposal had been made.

According to Elm Ridge's expert, Elm Ridge acted prudently in attempting to secure the necessary permits [Doc. 68-3 at 2]. Elm Ridge experienced delay in securing the necessary governmental approval and did not commence actual operations on the second well within 90 days after expiration of the notice period. [Doc. 68-3 at 6]

In July 2008, Elm Ridge sent a letter to Engle stating the following:

After a lengthy permitting process, Elm Ridge Resources re-proposes drilling a well to test the Fruitland Coal Formation in the above referenced location. Enclosed for your review and approval is our Authorization for Expenditure. Elm

2

> Ridge respectfully requests that you make an election as to whether you wish to participate in the drilling of this well. We had originally proposed this well on June 3, 2005.

[Doc. 68-6]  The cost of drilling the second well under the July 2008 proposal were significantly greater than under the 2005 proposal.[Doc. 68-3 at 9]  Elm Ridge began drilling the second well on October 21, 2008. [Doc. 68-3 at 6]

Article V.D. of the Operating Agreement provides that "[i]f it so desire, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefore shall not exceed the prevailing rates in the area  and the rate of  such charges shall be agreed upon by the parties in writing before drilling operations are commenced . . . ."  Elm Ridge drilled the second well using a rig hired from an affiliated company.  Elm Ridge did not notify Engle of this fact and therefore did not obtain his written agreement before drilling operations were commenced. [Doc. 76 at 16]  According to the affidavit of Terry Lindeman, Elm Ridge's District Superintendent, the prices charged by Elm Ridge's affiliate were always lower that what other companies in the area charged Elm Ridge for similar types of rigs. [Doc. 76-1]

**SUMMARY JUDGMENT STANDARDS**

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim . . . or the part of each claim. . .on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "  As our Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

3

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)."The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**DISCUSSION**

Engle asserts that Elm Ridge breached the Operating Agreement in two respects: (1) by not commencing the second well within the time periods specified by Article VI.B.1 of the Operating Agreement: (2) by drilling the second well using a rig owned by an affiliate company without giving Engle notice and obtaining his written agreement prior to commencing operations as required by Article V.D. of the Operating Agreement.

Engle's first claim of breach is based upon a misreading of Article VI.B of the Operating Agreement.  The language "provided, however, said commencement date may be extended  upon written notice of same by Operator to other parties, for a period of up to thirty (30) additional days, if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examinations or curative matter required for title approval or acceptance" appears to the Court to be a specific, self-contained force majeure provision that displaces the general force majeure provision of Article XI.  This point is reinforced by the language "*Notwithstanding the force majeure provisions of Article XI*, if the actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted [by Article VI.B.1]) and if any party hereto still desires to conduct said operation,

written notice proposing same must be resubmitted to the other parties in accordance with the provisions hereof as if no prior proposal had been made." (Emphasis added).  Reading the general force majeure provision of Article XI into Article  VI.B.1. would render ineffectual Article VI.B.1.'s narrower force majeure provision.   The Court concludes that the force majeure provisions of Article XI do not come into play in interpreting Article VI.B.1.  When Elm Ridge was unable to obtain the required drilling permits within 90 days of the expiration of the 30 day notice period, the original proposal simply lapsed, leaving the parties "as if no prior proposal had been made."

Engle's second claim of breach is well-founded.  Elm Ridge does not dispute that it did not give Engle notice that it was using a rig provided by an affiliate and that it did not obtain Engle's written consent to use a rig provided by an affiliate  prior to commencing drilling as required by Article V.D. of  the Operating Agreement..  However, as Elm Ridge points out, there is a genuine issue of material fact as to whether Elm Ridge's breach of Article V.D. is material.  "In order for a breach to justify the injured party's suspension of performance, the breach must be significant enough to amount to the nonoccurrence of a constructive condition of exchange."  E. Allan Farnsworth, *Contracts* § 8.16 (4th ed. 2004). The New Mexico Court of Appeals has endorsed the Restatement (Second) Contracts' test for materiality.  *Famiglietta v. Ivie-Miller Enterprises*, 126 N.M. 69, 74 (Ct. App. 1998).

Section 241 of the Restatement provides:

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the

> part of that benefit of which he will be deprived;
>
> (c)  the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Whether a breach is material is a question of fact. *Famiglietta*, 126 N.M. at 74.  In view of the affidavit of Terry Lindeman, Elm Ridge's District Superintendent, a reasonable juror could find that Engle was not damaged by the breach of the notice provision and that Elm Ridge acted in good faith in using the rig provided by its affiliate. The Court concludes that there are genuine issues of material fact as to whether Elm Ridge's breach of the notice provision is a material breach.

**CONCLUSION**

Engle's motion for summary judgment will be denied to the extent that it is based on the claim that Elm Ridge did not timely commence the proposed second well.  Engle's motion for summary judgment will be granted to the extent that it is based on Elm Ridge's failure to give notice that it was using a drilling rig provided by an affiliate.  Engle's motion for summary judgment will be denied on the issue of the materiality of Elm Ridge's breach of the notice provision.

**IT IS THEREFORE HEREBY ORDERED** that Defendant/Counterclaimant Fred Engle's Motion for Summary Judgment [Doc. 68]  **is granted in part and denied in part**;

**IT IS FURTHER ORDERED** Defendant/Counterclaimant Fred Engle's Motion for Summary Judgment **is denied** to his claim that Plaintiff/Counterclaim-Defendant Elm Ridge

Exploration Company, LLC is in breach of Article VI.B.1 of the Operating Agreement;

**IT IS FURTHER ORDERED** that partial summary judgment be entered in favor of Defendant/Counterclaimant Fred Engle and that Plaintiff/Counterclaim-Defendant Elm Ridge Exploration Company, LLC **is adjudged** to be in breach of Article V.D. of the Operating Agreement;

**IT IS FURTHER ORDERED** that genuine issues of material facts exist as to whether Plaintiff/Counterclaim-Defendant Elm Ridge Exploration Company LLC's breach of Article V.D. of the Operating Agreement constitutes a material breach, and accordingly, summary judgment will be **denied** on the issue of materiality.

So ordered this 6th day of September, 2011.

                                              M. CHRISTINA ARMIJO
                                              UNITED STATES DISTRICT JUDGE