## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELM RIDGE EXPLORATION COMPANY, LLC

       Plaintiff/Counterclaim Defendant,

vs.                                                        Civ. No. 10-00328 MCA/LFG

FRED ENGLE,

       Defendant/Counterclaimant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court on Plaintiff/Counter-Defendant Elm Ridge Exploration Company LLC ("Elm Ridge's") *Motion to Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) or, in the Alternative, for a New Trial Pursuant to Fed. R. Civ. P. 59(a)* [Doc. 177]. The Court has considered Elm Ridge's motion, Defendant/Counterclaimant Fred Engle ("Engle's") response, Elm Ridge's reply, the record in this case, and the applicable law, and is otherwise fully advised.

**Background**

Prior to trial, the Court determined that the Seventh Amendment required certain legal issues to be tried before a jury.  [Doc. 147 at 1] In furtherance of the Court's ruling, and pursuant to Fed. Civ. P. Rule 49, the Court prepared a special verdict form containing seven questions. Prior to the  submission of the case to the jury, the Court granted Elm Ridge's oral motion to dismiss Engle's counterclaim for punitive damages, but denied Elm Ridge's  motion to dismiss

Engle's counterclaim for compensatory damages.  The Court submitted the case to the jury, which returned a special verdict.   In its answers to questions Nos. 5, 6, and 7 on the special verdict form, the jury found that Elm Ridge had committed breaches of the Operating Agreement,  that these breaches increased the cost of drilling the West Bisti 22-1T Well by $77,349.00, and that the amount that a reasonably prudent operator conducting drilling operations in a good and workmanlike manner and in compliance with Article V.D. of the Operating Agreement would have incurred in drilling the West Bisti 22-1T Well was $235,167.31. [Doc. 165]  The jury indicated in a notation on the special verdict form that it had based its computations on "$312,516.31 for well completion to date," the exact amount claimed by Elm Ridge as expenses actually incurred in drilling the West Bisti 22-1T Well. [Ex. 6] Thereafter, the Court entered findings of fact deferring to the jury's answers to the questions posed by the special verdict, and on January 27, 2012, the Court entered judgment.

**Discussion**

The Court begins it analysis with Elm Ridge's Fed. Civ. P. Rule 59(e) motion to alter or amend the judgment.  By its motion, Elm Ridge asks the Court to set aside the jury's answers to questions Nos. 6 and 7[1] and to enter judgment in favor of Elm Ridge for $312,516.31, the full amount of damages claimed by Elm Ridge at trial, and an amount considerably larger than the

---

[1]Although the parties have assumed that the jury's answer to question No. 6 is a finding on the amount of damages on Engle's counterclaim, the Court is not persuaded that this necessarily is the case.  The term damages does not appear anywhere in the special verdict and the jury was not instructed on how to offset any damages on Engle's counterclaim against the damages awarded on Elm Ridge's claim.  It is possible, if not likely, that the jury reduced the $312,516.31 claimed by Elm Ridge, not by way of awarding damages to Engle and then setting off these damages against the $312,516.31claimed by Elm Ridge, but rather by concluding that Elm Ridge was not entitled to recover expenses incurred in breach of the Operating Agreement.

amount the jury awarded.  Elm Ridge has not cited any authority supporting such an application of Rule 59(e).  The Court's research establishes that applying Rule 59(e) to increase Elm Ridge's damages over the amount awarded by the jury would violate the Seventh Amendment.  *Clearone Communications, Inc. v. Biamp Systems*, 653 F.3d 1163, 1179 (10th Cir. 2011) ("Additur is prohibited in the federal courts 'because it involves an unconstitutional reexamination of the jury verdict in violation of the Seventh Amendment.'").  "A motion to alter or amend judgment pursuant to Rule 59(e) may not be granted where to do so would undermine the jury's fact-finding role. . . ."  *Robinson v. Watts Detective Agency*,  685 F.2d 729,742 (1st Cir. 1982).  The Court declines to apply Rule 59(e) in a patently unconstitutional manner, and therefore denies Elm Ridge's motion to the extent it seeks to alter or amend the judgment.

As an alternative to its request that the Court alter or amend the judgment, Elm Ridge has requested a partial new trial pursuant to Fed. Civ. P. Rule 59(a) on the ground that the jury's answer to question No. 6 is not supported by any evidence.  Rule 59(a) authorizes a court "on motion, [to] grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ."  "In a diversity action state law governs the propriety of an award of damages.  Under the law of  New Mexico, a jury's assessment of damages is largely inviolate and is not to be disturbed except in extreme cases. . . ."  *Smith v. Ingersoll-Rand Co.*,  214 F.3d 1235, 1251 (10th Cir. 2000).  Under New Mexico law, a new trial may be ordered where the amount of damages awarded by the jury is so excessive as to "shock the conscience" of the court.  *Sandoval v. Chrysler Corp.*,  125 N.M. 292, 295 (Ct. App. 1998). Whether the amount of damages shocks the court's conscience is determined by "(1) whether the evidence, viewed in the light most favorable to plaintiff,

substantially supports the award [or) (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder." *Id.* Elm Ridge's argument that the jury's answer to question No. 6  is not supported by *any* evidence falls squarely within the first ground for granting a new trial recognized by New Mexico courts.

The Court notes the following evidence presented:  There was evidence that a 24-hour rig could have been set up, have drilled the well, and have been taken down in as little as five days;[2] that 24-hour rigs were renting for as little as $9,200/day toward the end of 2008 [Ex. 14]; and that 24-hour rigs were available "all over" the San Juan Basin at the beginning of calendar year 2009.  Thus, the jury might have reasoned that a 24-hour rig could have been rented for as little as $46,000 ($9,200/day multiplied by 5 days) versus $58,625, the amount claimed by Elm Ridge for renting a "full package" (234.5 hours at $250/hour) [Ex.5 at 216-22]; that by cutting the number of days from required to drill the well from twenty-two to as little as five, employment of a 24-hour rig would have substantially reduced the costs of travel time ($280/day) and crew pick up ($140/day) [*id.*]; and that use of  a 24-hour rig would have obviated rental of a power swivel at $900/day for twenty-two days [*id.*].  Further, use of a daylight rig required the rental of lighting equipment and a generator [Ex. 5 at 171-73].  There was evidence that lighting equipment was included with a 24-hour rig, obviating the rental of lighting equipment and a separate generator. There was evidence from which the jury could have found that the use of a

---

[2]Elm Ridge's expert testified that "it takes at least a day to rig up [a 24-hour rig]. Same thing when you're done."  The West Bisti 22-1T was drilled to a depth of 1415 feet. [Ex. 13] Wells of similar or greater depth were drilled in as little as three days, apparently by 24-hour rigs.  [*Id.*]

daylight rig required as much as seventeen additional days of engineer/supervisor services [Ex. 5 at 168-69].  Based on figures taken from Elm Ridge's 2008 AFE, Elm Ridge's own expert estimated the cost of drilling the West Bisti 22-1T Well using a 24-hour rig at $236,800. [Ex. 15].  Subtracting $236,800 from $312,516.31, the amount claimed by Elm Ridge, results in a figure very close to the jury's answer to question No. 6.  The Court concludes that there was substantial evidence supporting  the jury's finding that Elm Ridge's decision to drill the West Bisti 22-1T Well with a daylight rig provided by its affiliate increased the cost of drilling the West Bisti 22-1T Well by $77,349.00.

As to breach, the jury was instructed that Elm Ridge had breached the Operating Agreement by not obtaining Engle's written permission to employ its affiliate, Triple P.  [Doc. 161 at 13]  Of the amount claimed by Elm Ridge, $92,849 was incurred for services provided by Triple P. [Ex. 6 at 2]  A substantial portion of this sum was attributable to costs associated with the daylight rig provided by Triple P. Alternatively, in view of evidence that waiting until a 24-hour rig became available would not have jeopardized the venture's permits (since the critical event, spudding the well, had occurred in August 2008),[3] the jury could have found that Elm Ridge's decision to drill the West Bisti 22-1T Well with a daylight rig at significantly greater cost was a breach of Elm Ridge's contractual duty to conduct operations in the manner of a reasonably prudent operator.[Doc. 161 at 18]  In view of evidence that Triple P was an affiliate of Elm Ridge, the jury could have reasoned that El Ridge's decision to drill the West Bisti 22-1T Well using a daylight rig was skewed by its knowledge that much of the additional cost of drilling the well using a daylight rig would be paid to its affiliate; and, therefore, that Elm

---

[3]James M. Clark, Elm Ridge's president, conceded this point during cross-examination.

Ridge's decision to drill the West Bisti 22-1T Well with a daylight rig provided by its affiliate violated the duty of good faith [Doc. 161 at 19] or the requirement that "[a] prudent operator may not act only for his self-interest."  [Doc. 161 at 18]   The Court concludes that there was substantial evidence that Elm Ridge had breached the Operating Agreement.

**Conclusion**

The jury's answers to questions Nos. 6 and 7 are supported by substantial evidence and the amounts found by the jury cannot be said to shock the Court's conscience.

**IT IS THEREBY HEREBY ORDERED** that *Motion to Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) or, in the Alternative, for a New Trial Pursuant to Fed. R. Civ. P. 59(a)* [Doc. 177] is **denied.**

So ordered this 19th day of June, 2012.


M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE

6